Mario Pittoni, J.
In this proceeding pursuant to CPLR article 78, petitioners apply for ¡judgment vacating, annulling and setting aside respondent town board’s Resolutions No. 1443-1967 and No. 1977-1967 wherein respondent board states they were in the public interest and approved site plans and parking facilities described therein by Aurora Plastics Corp. Petitioners, whose properties adjoin subject premises, do not contest the prior change of zoning of the premises from business and residence to light manufacturing.
*990 The core of petitioners’ contention is that the Town Building Zone .Ordinance (§ G-19.0, suhds. [a], [d]) has been violated in that a building ‘ ‘ permit shall be denied unless such plot plan shall provide for such parking in compliance herewith.”, in that Aurora was required under the ordinance to have space for 361 cars, in that, taking Aurora’s figures, Aurora fell far short of this required number because 216 cars would be on premises not owned by Aurora, but leased from the Village of Garden City under a lease dated December 23,1966 that could be terminated by the village as early as April 22,1968, less than 5 months away.
The lease reads, in part, as follows: “ 6. Notwithstanding other provisions of this lease, the Landlord may at any time after the expiration of one year and three months from the date hereof give the Tenant thirty (30) days’ notice in writing, stating that the term of this lease between the Landlord and the Tenant shall expire after the expiration of said thirty (30) days, and thereupon the term of this lease shall expire by lapse of time as by conditional limitation upon the thirtieth day after such notice is given, and the Tenant shall vacate the demised premises affected by such notice or notices, and surrender the same, to the Landlord, * *
Petitioners’ contention is well taken, because the Village of Garden City can terminate, the lease before the new building is finished, or soon after completion, and Aurora would then occupy and use its building, but be short the space for the 216 cars now available under the lease. I am sure that the ordinance requiring space for the parking of a certain number of cars was not limited to the day of the application, or of the board’s consideration, or of the board’s decision, or for a short period thereafter. I am sure that the language of the ordinance requiring a certain number of spaces for off-street parking meant that such spaces would continue to be available, without diminution, for a reasonable number of years, co-extensive with the expected occupancy and use of the premises. In this case, after April, 1968, Aurora has virtually no control over its leased premises. A terminable lease such as this is not sufficient protection for the long-term benefits which are envisioned by the ordinance’s off-street parking requirements.
Should the board’s decisions be permitted to stand and should the Village of Garden City terminate its lease after Aurora’s building is completed, Aurora would be begging the board for different and further relief and this could result in such a permission as to encourage added street parking by Aurora personnel and customers. This, clearly, would be contrary to public interest.
*991 (It may be noted that Abraham & Straus in Hempstead took care of a tight parking situation by tier structures.)
Therefore, respondent board’s Resolutions are not in the public interest and are in violation of section Gr-19.0 of the Building Zone Ordinance. They are, accordingly, vacated, annulled and set aside.
Judgment is granted in favor of petitioners.